IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

CONNIE R. KING and AUBERT H. KING,
individually and as adult next friends of C.K.                          PLAINTIFFS

VERSUS                                    CIVIL ACTION NO. 2:10cv14KS-MTP

FREEDOM LIFE INSURANCE COMPANY
OF AMERICA and MARY E. WILSON                              DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This cause is before the Court on the Motion to Remand filed by Plaintiffs Connie R. and

Aubert H. King, individually and as next friends of a minor, C.K.  [Doc. # 8] (Oct. 14, 2010) and

memorandum in support [Doc. # 10].  Defendant Freedom Life Insurance Company of America

("Freedom Life") opposes the motion.  Def.'s Resp. [Doc. # 13] (Oct. 28, 2010); Mem. Supp.

Resp. [Doc. # 14] (Oct. 28, 2010).  The sole question presented is whether non-diverse defendant

Mary E. Wilson was fraudulently joined.  Because the Kings fail to state a claim upon which

relief may be granted against the only non-diverse defendant, this court has subject matter

jurisdiction and the motion to remand should be **denied.**

## I. BACKGROUND

In July 2007, C.K., a minor, was involved in a one car automobile accident.  The Kings

filed medical claims with their health insurance provider, Freedom Life, but the claims were

denied in November 2007 under its intoxicating substance and illegal activity exclusion of their

policy.  Some medical claims were paid prior to the denial, and Freedom Life alerted the Kings

that they would seek reimbursement for some of the claims paid.  Compl. ¶ 12. [Doc. # 1-3].

1

The Kings purchased this policy in May 2000.  The Kings assert that they did not know of these exclusions and are seeking damages against Freedom Life and one its agents, Mary Wilson, for "negligence [negligence against Mary Wilson, negligent supervision against Freedom life], bad faith, negligent infliction of emotional distress, detrimental reliance, violation of good faith and fair dealing, voidance as being in violation of public policy and voidance as being in violation of minority." *See* Pls.' Rebuttal at ¶ 2 [Doc. # 15].

The only factual allegation against Wilson is as follows:

> Recently, the Kings encountered Defendant, MARY E. WILSON.  The Kings and Ms. Wilson had not seen each other for quite a period of time.  Ms. Wilson, apparently unaware of the accident in which C was involved, inquired of Mrs. King as to how everyone was doing.  Mrs. King told her about C's accident and the problem which they had encountered with the insurance coverage.  Ms. Wilson exclaimed, to the effect, "I did not know that was in the policy" and "please don't sue me, I do not have anything."

Compl. ¶ 13 [Doc. # 1-3].  The Kings' Complaint alleges that Wilson sold the initial policy to them.  *See* Compl. ¶ 35.  They do not allege or provide evidence that she played a role in determining whether the claims were covered or that she played any role in denying the claims. In fact, from the facts alleged above, it appears as though Wilson had no idea that the accident occurred, much less that a claim had been filed by the Kings and subsequently denied by Freedom Life.

Plaintiffs filed suit in the First Judicial Circuit of Jones County, Mississippi, in July 1, 2009.  Freedom Life filed its Notice of Removal on January 13, 2010.  Before removal, Mary Wilson filed for Chapter 13 bankruptcy.  However, on October 1, 2010, the United States Bankruptcy Court issued an Agreed Order Granting Limited Lifting of Automatic Stay in Wilson's bankruptcy case "to the extent and limit of any liability insurance which she might

have in place that will cover her actions as alleged in the complaint currently pending against her" in the District Court.  Following the limited lift of stay, the Kings filed the instant motion asking that the Court remand the proceeding to state court because the Kings and Wilson are all citizens of Mississippi and, as a result, the court lacks subject matter jurisdiction over the state law claims.  In reply, Freedom Life argues that Wilson's citizenship is irrelevant because there is no possibility of recovery against her and she is improperly joined as a defendant.

## II. STANDARD OF REVIEW

A party may remove an action from state to federal court if the action is one over which the federal court possesses subject matter jurisdiction.  *See* 28 U.S.C. § 1441(a).  28 U.S.C. § 1332 confers federal diversity jurisdiction over civil actions where the matter in controversy exceeds $ 75,000.00 and the action is between citizens of different states.  "The removing party bears the burden of showing that federal jurisdiction exists and that removal was proper." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citing cases).

Generally, all Defendants to an action must consent to the removal.  *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir. 1993).  However, a removing party does not need the consent of parties they claim have been fraudulently joined.  *Id.*

"The burden of persuasion placed upon those who cry 'fraudulent joinder' is indeed a heavy one." *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981).  The removing party must show either that there is no reasonable "possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or that there has been outright fraud in the plaintiff's pleadings of jurisdictional facts." *Id.* at 549 (citing *Keating v.*

3

*Shell Chemical Co.*, 610 F.2d 328 (5th Cir. 1980); *Tedder v. F.M.C. Corp. et al,* 590 F.2d 115

(5th Cir. 1979); *Bobby Jones Garden Apts. v. Suleski*, 391 F.2d 172 (5th Cir. 1968); *Parks v.*

*New York Times Co.*, 308 F.2d 474 (5th Cir. 1962), *cert. denied*, 376 U.S. 949 (1964)).

  This court must refer to the allegations made in the original pleading to determine

whether the plaintiff can make out a viable claim against the non-diverse defendant.  *See Tedder*

*v. F.M.C. Corp.*, 590 F.2d at 116; *Gray v. U. S. Fidelity and Guaranty Co.*, 646 F. Supp. 27, 29

(S.D. Miss. 1986).  Those allegations must be construed most favorably to the plaintiff as the

party opposing removal, resolving all contested issues of fact and ambiguities in the law in favor

of the plaintiff.  *B. Inc.*, 663 F.2d at 549; *see also Bobby Jones Garden Apts.*, 391 F.2d at 177;

*Carrier v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir. 1990).

  The United States Supreme Court has recently clarified the plaintiff's initial pleading

burden under Rule 8(a) to sufficiently state a claim and survive a Rule 12(b)(6) motion.  "To

survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true,

to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-

50 (2009)).  The court is "not bound to accept as true a legal conclusion couched as a factual

allegation."  *Id.*  The Court further stated:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short
> and plain statement of the claim showing that the pleader is entitled to relief."  As
> the Court held in *Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929, the
> pleading standard Rule 8 announces does not require "detailed factual
> allegations," but it demands more than an unadorned, the-defendant-unlawfully-
> harmed-me accusation. *Id.* at 555, 127 S.Ct. 1955 (citing *Papasan v. Allain*, 478
> U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). A pleading that offers
> "labels and conclusions" or "a formulaic recitation of the elements of a cause of
> action will not do." 550 U.S., at 555, 127 S.Ct. 1955. Nor does a complaint
> suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."
> *Id.* at 557, 127 S.Ct. 1955.

*Id.*

When considering whether a non-diverse defendant has been fraudulently joined to defeat diversity of citizenship jurisdiction, courts may "pierce the pleadings" and consider "summary judgment-type" evidence such as affidavits and deposition testimony. *See Cavallini v. State Farms Auto Ins. Co.*, 44 F.3d 256, 263 (5th Cir. 1995). Conclusory or generic allegations of wrongdoing on the part of the non-diverse defendant are not sufficient to show that a defendant was not fraudulently joined. *See Badon v. RJR Nabisco, Inc.,* 224 F.3d 382, 392-93 (5th Cir. 2000); *Peters v. Metropolitan Life Ins. Co.*, 164 F.Supp.2d 830, 834 (S.D. Miss. 2001). Removal is proper if the plaintiff's pleading is pierced, and it is shown that as a matter of law there is no reasonable basis for predicting that the plaintiff might establish liability on that claim. *See Smallwood v. Ill. Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004); *Badon*, 224 F.3d at 390. "We do not, . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Badon,* 224 F.3d at 394 (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

Regarding piercing the pleadings in an improper joinder case, the Fifth Circuit held that

A court may resolve the issue in one of two ways. The court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder. That said, there are cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder. In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry.

*Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004)(en banc)(internal footnotes omitted), *cert. denied*, 544 U.S. 992 (2005). However, the Fifth Circuit went on to caution,

While the decision regarding the procedure necessary in a given case must lie within the

5

discretion of the trial court, we caution that a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant.  In this inquiry the motive or purpose of the joinder of in-state defendants is not relevant. We emphasize that any piercing of the pleadings should not entail substantial hearings. Discovery by the parties should not be allowed except on a tight judicial tether, sharply tailored to the question at hand, and only after a showing of its necessity. Attempting to proceed beyond this summary process carries a heavy risk of moving the court beyond jurisdiction and into a resolution of the merits, as distinguished from an analysis of the court's diversity jurisdiction by a simple and quick exposure of the chances of the claim against the in-state defendant alleged to be improperly joined. Indeed, the inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden.

*Id.* at 573-74 (internal footnotes omitted).


### III. APPLICATION AND ANALYSIS

To avoid remand, Freedom Life  must prove that the Kings cannot establish a cause of action against Wilson, and that Wilson is therefore fraudulently joined.  Without the joinder of Wilson who, like the Kings, is a citizen of Mississippi, there is complete diversity between the parties and this Court would have proper jurisdiction.

First, just as the Kings' claims for breach of contract and specific performance brought solely against Freedom Life would not be successful against Wilson, a non-party to the contract, so to the claims of voidance cannot succeed against Wilson as a non-party as a matter of law. Wilson was not a party to the contract, but rather an agent for a disclosed principal.  The claims of voidance which seek to void the contract on public policy grounds and due to the injured plaintiff's minority status would not apply to Wilson because she is not a party to the contract.

Second, the Kings have not alleged that Wilson was involved in the denial of the claim. To the contrary, it appears on the face of the complaint, that Wilson only learned of Freedom

Life's denial of the claims well after the denial took place.  As noted above, generic allegations are not enough to show that Wilson was properly joined and the Court will not assume that the Kings could show that she was involved in the denial.  The Kings' claim for negligent infliction of emotional distress alleges that Freedom Life and Wilson "refused to honor the claims on the insurance policy" and knowingly and wilfully caused emotional distress upon the Plaintiffs by their failure to pay benefits due the Plaintiffs under the policy."  Compl. ¶ 23. Again, this claim could not possibly succeed given the facts that are alleged by the Kings, namely that when they first saw Wilson after the accident, she knew of neither the accident or the denial of claims. Similarly, the Kings' claim for detrimental reliance asserts that they relied to their detriment on Freedom Life's initial payment of some claims after the accident and have suffered because of Freedom Life's subsequent denial of all claims.  Compl. ¶ 26.  Likewise, the claim for bad faith alleges that Wilson "refused to honor the claims on the insurance policy."  Compl. ¶ 22.  The claim for violation of good faith and fair dealing alleges that defendants "refused to pay the claim and continues to refuse to pay the claim" and that they have "withheld, delayed, and denied insurance benefits due to the Plaintiffs."  Compl. ¶ 29.  Again, the Kings simply have not presented any set of facts to show that Wilson had anything to do with the denial or payment of benefits for any medical claims that would support these causes of action against her.

Reading the complaint liberally, the only claims brought against Wilson relating to her role in selling the insurance are the claim for negligence and possibly claims for misrepresentation and detrimental reliance.  The Kings allege that she was negligent because she "knew or should have known of the provisions in the insurance policy which she sold unto the Plaintiffs."  Compl. ¶ 35.  Further, they allege that she "did not know of the provision or

negligently failed to know the provisions of the product which she was selling and further, failed

to advise the Plaintiffs of these provisions, a duty which she owed the Plaintiffs" and that

because they relied on her to her detriment, they suffered financially.  Compl. ¶ 35.  The Kings

have not demonstrated that there is any basis for recovery for any of these claims based on her

sale of the policy to the Kings.

Under Mississippi law, an agent is not liable for payment of contractual benefits and has

no implied duty of good faith and fair dealing under a bad faith theory of recovery.  *See Jabour*

*v. Life Ins. Co. of North America*, 362 F. Supp.2 d 736, 740-41 (S.D. Miss. 2005) (citing *Jenkins*

*v. Farmington Cas. Co.*, 979 F. Supp. 454, 457 (S.D. Miss. 1997); *Bass v. Calif. Life Ins. Co.*,

581 So. 2d 1087, 1090 (Miss. 1991)).  "[A]n insurance adjuster, agent or other similar entity may

not be held independently liable for simple negligence in connection its work on a claim."  *See*

*Gallagher Bassett Servs., Inc. v. Jeffcoat*, 887 So.2d 777, 784 (Miss. 2004).   "Such an entity

may be held independently liable for its work on a claim if and only if its acts amount to any one

of the following familiar types of conduct: gross negligence, malice, or reckless disregard for the

rights of the insured. " *Id.*  Mississippi law has not imposed a duty upon agents to recommend or

select particular coverage for their clients, or disclose every specific exclusion, so long as they

use reasonable care to procure the coverage requested.  *See Curry v. State Farm Mut. Auto Ins.,*

599 F.Supp.2d 734, 738-39 (S.D. Miss. 2009) (finding agent fraudulently joined without

evidence that he failed to procure coverage at all or failed to provide the coverage specifically

requested); *see also Thomas v. State Farm Mut. Auto. Ins. Co.*, 796 F.Supp. 231, 237 (S.D. Miss.

1992).

Here, the most that the Kings allege is that Wilson, when she sold them the policy, did

not know about or advise them that coverage for losses caused by the insured engaging in illegal activity or for losses occurring when the insured was under the influence of a narcotic or was intoxicated was excluded.  Certainly Wilson did not fail to procure the Kings' health insurance policy as some claims were indeed paid. Nor do the Kings allege that they specifically requested a policy that would cover incidents arising from during the use of intoxicating substances or in the commission of illegal activities or that Wilson represented that theses types of incidents would be covered.

Even if the Court assumes that Wilson misrepresented to the Kings that the policy would cover injuries arising from illegal activities and intoxication, any claim for detrimental reliance is foreclosed because the written policy clearly listed all the exclusions, including the ones that applied to this claim denial.  In Mississippi, "insureds are bound as a matter of law by the knowledge of the contents of a contract in which they entered notwithstanding whether they actually read the policy."  *Stephens v. Equitable Life Assur. Society of U.S.*, 850 So.2d 78, 83 (Miss. 2003); *see also Godfrey, Bassett & Kuykendoll Architects, Ltd. v. Huntington Lumber & Supply Co., Inc.*, 584 So.2d 1254, 1257 (Miss. 1991) ("a person is under an obligation to read a contract before signing it, and will not as a general rule be heard to complain of an oral misrepresentation the error of which would have been disclosed by reading the contract."). Here, the health insurance policy clearly stated the applicable exclusions.  *See* Compl., Ex. A. at 14 [Doc. # 1-3].  Regardless of whether the Kings read the policy, they received it nearly seven years before the accident and nine years before filing suit, and therefore, knowledge of the contents is imputed to them.  Therefore a claim for detrimental reliance is foreclosed as a matter of law.

Third, even if there was a possibility of recovery against Wilson for her role as the agent who sold the insurance to the Kings, the Kings do not contest that the negligence and misrepresentation claims are time-barred under the three year general statute of limitations.  The general statute of limitations that would apply to these claims is three years.  *See* MISS. CODE ANN. § 15-1-49 (1972).  Mississippi law is clear that if the written policies unambiguously contradict any alleged misrepresentations by the agent, the claim accrues when the policies are purchased.  *See Weathers v. Metropolitan Life Ins. Co.*, 14 So.3d 688, 693 ¶17 (Miss. 2009).  Here, the exclusions were contained in the written policy terms that the Kings  would have received in 2000 when they purchased the health insurance.  The present lawsuit was filed in 2009, nine years after the claim accrued, and six years after the expiration of the statute of limitations.  Therefore, any claims for negligence and misrepresentation would be time-barred and recovery would be impossible.

## IV. CONCLUSION

Freedom Life has met its burden to show that there is no possibility of recovery against Wilson and that she is therefore improperly joined.  The voidance claims fail as a matter of law because Wilson is not a party to the health insurance policy.  The Kings' claims for negligence, misrepresentation, bad faith, and negligent infliction of emotional distress fail because the Kings have not alleged that Wilson was involved in the denial of the claims.  Nor do the claims for negligence and misrepresentation arising out of her sale of the policy have a possibility of recovery because Wilson had no duty to recommend particular coverage, and any misrepresentations were clarified by the written policy agreement.  Finally, all claims for

10

negligence and misrepresentation stemming from Wilson's policy sale would be time-barred under the applicable statute of limitations.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion to Remand  [Doc. #4] is **DENIED** and the stay in this case shall be lifted and the case returned to the standard track.  The parties are directed to contact U.S. Magistrate Judge Michael T. Parker within ten days of the date of this order for a scheduling conference date.

 IT IS FURTHER ORDERED AND ADJUDGED that Mary Wilson be dismissed with prejudice as she was improperly joined.

SO ORDERED AND ADJUDGED on this, the 10th day of November, 2010.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE